**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
378 N. Main Avenue
Tucson, AZ 85701,

*Plaintiff*,

v.

DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*,
1849 C Street NW
Washington, DC 20240,

and

U.S. FISH AND WILDLIFE SERVICE,
1849 C Street NW
Washington, DC 20240,

*Defendants*.

Case No. 26-3041

**COMPLAINT FOR DECLARATOR AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue a timely 12-month finding for the Sulawesi forest turtle (*Leucocephalon yuwonoi*) under the Endangered Species Act's ("ESA" or "Act") nondiscretionary deadline. 16 U.S.C. § 1533(b)(3)(D)(ii). This turtle from Indonesia is imported into the United States as part of our substantial pet trade. The Service's failure to meet the deadline delays crucial, lifesaving protections for this imperiled species, increasing the species' risk of extinction.

2. Defendants have abrogated their duty to ensure that the species is timely protected to avoid further decline and an increased risk of extinction, in violation of Section 4 of the ESA.

3. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated the ESA by failing to issue a 12-month finding for the Sulawesi forest turtle and directing the Service to issue the 12-month finding by a date certain.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) and 28 U.S.C. § 1331. This Court has authority to issue declaratory and injunctive relief pursuant to: 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; 5 U.S.C. § 706(2); and the Court's equitable powers.

5. The ESA provides a waiver of the federal government's sovereign immunity. 16 U.S.C. § 1540(g).

6. Plaintiff provided Defendants with 60-days' notice of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to Defendants dated March 11, 2026 and received by the agency on that same date.

7. Defendant Doug Burgum, Secretary of the Interior, received a copy of the Center's notice letter by electronic mail on March 11, 2026, and via first-class, certified mail on March 19, 2026.

8. Defendant U.S. Fish and Wildlife Service ("the Service") received a copy of the Center's notice letter, directed to Brian Nesvik Director of the Service, by electronic mail on March 11, 2026, and via first-class, certified mail on March 19, 2026.

9. In a letter signed April 29, 2026, the Service indicated "[t]his 12-month finding is one of many outstanding actions we must complete."

10. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. Venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because Defendants reside in this judicial district and a substantial part of the violations of law by Defendants have occurred in this district.

## PARTIES

### A. Plaintiffs

12. Plaintiff Center for Biological Diversity ("the Center") is a 501(c)(3) nonprofit corporation incorporated in the State of California. The Center maintains offices across the country, including in Washington, DC; California; Arizona; and Oregon; and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats. The Center's International Program works to protect global biodiversity by using U.S. and international law to protect imperiled species wherever they are found around the globe. In pursuit of its mission, the Center has been actively involved in seeking and securing protections for species abroad, including lizards, frogs, ornamental fish, and turtles in the pet trade. The Center has more than 101,000 active members and approximately 1.8 million online activists living both in the United States and other nations.

13. The Center and its members derive professional, scientific, educational, recreational, conservation, aesthetic, and other benefits from Sulawesi forest turtles existing in the wild. The Center has members who have concrete plans to visit the habitat of this turtle and attempt to view it in the wild. Plaintiff also has members who regularly visit wildlife markets to

attempt to observe and document wildlife offered for sale, including reptiles, and other animals in the pet trade.

14. For example, Center member Mr. David Channon has a deep interest in wildlife and traveling globally to observe, photograph, and enjoy wild animals in their native habitats. He previously lived in Sumatra, Indonesia, and now that he is a retired professor, Mr. Channon enjoys returning to Indonesia and other parts of southeast Asia while working with a non-profit dedicated to training teachers. Through these trainings, Mr. Channon has been able to return to Indonesia and spend time there enjoying nature and wildlife. During his trip this year, he chose to visit Sulawesi and look for the Sulawesi forest turtle. While he was unable to view the turtle during his trip, he plans to return this winter or next year to again look for the species.

15. Mr. Brett Hartl is a Center member and avid world traveler who looks for, photographs, and records videos of wildlife both in the United States and abroad. Thus far, Mr. Hartl has observed 600 species of mammals, 4,100 species of birds, and numerous other species around the world, and he has a life goal of seeing many more. Mr. Hartl has visited Indonesia four times, returning from his most recent trip in June 2025. During a previous trip, Mr. Hartl visited the Island of Sulawesi, which is well known for its myriad endemic and rare species, and looked for birds, mammals, reptiles, and amphibians including the Sulawesi forest turtle. During his travels to Indonesia, he has visited many different areas, often with local guides, to observe and attempt to observe rare and interesting wildlife. Mr. Hartl has concrete plans to return to Indonesia in the next three to four years. During that trip, he plans to return to the Island of Sulawesi and visit habitat thought to be occupied by the Sulawesi forest turtle to once again attempt to view the turtle as well as other species.

16. Defendants' violations have directly, adversely, and irreparably harmed the Center and its members' interests in this turtle. This harm is ongoing and will continue unless and until this Court provides the relief prayed for in this Complaint. The Center's members are less likely to observe Sulawesi forest turtles in the wild as the species continues to decline without ESA protections.

17. The relief sought in this Complaint would redress Plaintiff's members' injuries. ESA listing would provide Sulawesi forest turtles with important protections and benefits. The ESA generally bans the import, export, and sale of endangered species in interstate and foreign commerce, 16 U.S.C. § 1538(a), and requires the Service to issue regulations deemed "necessary and advisable" for the conservation of threatened species, *id.* § 1533(d).

18. The ESA also provides for "international cooperation" in the conservation of listed foreign species. 16 U.S.C. § 1537. ESA listing increases awareness of listed species and their threats; stimulates research efforts to address conservation needs; and increases funding for conservation of species in their range countries, including for habitat conservation. Under the ESA, the Service provides financial assistance for programs to conserve listed species in foreign countries, encourages conservation programs for such species, and offers other related assistance, such as personnel and training.

19. Therefore, the Center and its members are injured by Defendants' failure to make a timely 12-month finding on the Center's petition to list the Sulawesi forest turtle under the ESA. Defendants' protracted failure prevents the application of the ESA's substantive protections that are vitally important to the turtle's survival and eventual recovery.

20. These are actual, concrete injuries presently suffered by the Center and its members. These injuries are directly caused by Defendants' acts and omissions, and they will

continue to occur unless the Court grants relief. The Center and its members have no other adequate remedy at law.

**B. Defendants**

21. Defendant Doug Burgum is the Secretary of the U.S. Department of the Interior. In this capacity, Secretary Burgum directs all business of the Department of the Interior. Pursuant to the ESA, Secretary Burgum is responsible for determining whether species are endangered or threatened and for promulgating regulations to list and protect those species. In his official capacity, Secretary Burgum is responsible for the violations alleged in this Complaint.

22. Defendant U.S. Fish and Wildlife Service ("the Service") is an agency within the Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to administer the ESA for many species of wildlife, 50 C.F.R. § 402.01(b), including the responsibility of complying with the ESA's mandatory listing deadlines. This authority encompasses proposed and final listing decisions for this turtle species.

## STATUTORY FRAMEWORK

**A. The Endangered Species Act**

23. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Recognizing that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," Congress enacted the ESA in 1973 "to provide a program for the conservation of" these species. 16 U.S.C. § 1531(a)(3), (b).

24. To this end, Section 4 of the ESA requires the Secretary of the Interior to determine whether any species is "endangered" or "threatened," and if so, list the species under the ESA. 16 U.S.C. § 1533(a), (c). The Secretary has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

25. An endangered species is any species that "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A threatened species is any species that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

26. The Service must list a species if it is endangered or threatened due to: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must make listing determinations "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species." *Id*. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

27. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. 16 U.S.C. § 1532(16) (defining "species").

28. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines.

29. First, within 90 days of receiving a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

30. If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." 16 U.S.C. § 1533(b)(3)(A).

31. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. 16 U.S.C. § 1533(b)(3)(B).

32. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. 16 U.S.C. § 1533(b)(3)(B)(ii).

33. Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. 16 U.S.C. § 1533(b)(6)(A). This is known as a "final listing rule."

# FACTUAL BACKGROUND

**A. Sulawesi forest turtles**

34. Sulawesi forest turtles are rare freshwater turtles that are endemic to the Minahasa Peninsula of the Island of Sulawesi, Indonesia.



35. Sulawesi forest turtle populations are thought to have declined by 80% over the past three generations due to overexploitation and habitat loss and degradation. The species was assessed as Critically Endangered by the International Union for the Conservation of Nature (IUCN) in 2018.

36. Discovered in 1995, this elusive turtle was rapidly found in trade with IUCN documenting some 2–3,000 turtles seized in 1998 dropping to 100 individuals in 1999.

37. Demand for the species for pets is fueled by its rarity, smaller size, geometric patterned shell, and creamy-yellow head with markings.

38. Demand for the species for pets led IUCN to conclude the species is heavily impacted by overexploitation for the international pet trade.

39. Sulawesi forest turtles are also captured and traded for food and medicinal markets.

40. The turtles are slow to reproduce, reaching maturity at seven to ten years of age and producing only one to two eggs per clutch. This means the species is particularly susceptible to over collection due to low recruitment.

41. The United States historically imports the highest number of Sulawesi forest turtles globally and the majority of U.S. imports are for commercial purposes.

42. Capture and trade of Sulawesi forest turtles is illegal in Indonesia (due to the lack of a quota for this species). Imports and subsequent sales of wild-caught specimens in the United States violates the Lacey Act. Despite this, Sulawesi forest turtles are still available online from U.S.-based retailers.

43. The listing petition documented sale prices of $3,450, our 90-day comments documented sales marked at $2,850, and current advertisements span the range between the two price points.

44. Despite these hefty sale prices, Sulawesi forest turtles are challenging to maintain in captivity and breeding them successfully outside the wild is very difficult.

45. The difficulties in successfully breeding the turtles in captivity calls into question specimens labeled as captive bred or captive born.

46. Conservationists and hobbyists in the United States indicate that it takes years for Sulawesi forest turtles to adapt to captivity (with many not surviving at all) and significant efforts for them to produce eggs let alone fertile eggs.

47. Given the demand for the species, illegal trade in the turtles as well as laundering of wild caught turtles as captive is a concern for this species including for specimens originating from Indonesia.

48. In the wild, the turtles are found in primary and secondary forests near shallow, clear streams and utilize both stream and forest habitats.

49. The turtles are reportedly collected from streams at night.

50. Sulawesi forest turtle habitat is being destroyed and degraded by commercial logging, agricultural expansion, and mining.

51. The Island of Sulawesi as a whole is thought to have lost 50–80% of its forest cover over the past 100 years. As such, recent deforestation estimates may appear low when compared with other Indonesian Islands but not when compared against historic loss.

52. North Sulawesi Province, within the range of the Sulawesi forest turtle, has lost around 23% of its forest cover.

53. Impacts to both forests as well as streams threaten Sulawesi forest turtles.

54. The turtles are also threatened by climate change and potentially by parasites.

55. Existing regulatory mechanisms, both under the Convention on International Trade in Endangered Species of Fauna and Flora (CITES) and locally in Indonesia, are inadequate to protect the turtles as evidenced by the species' on-going decline and continued exploitation.

**B. Listing Petition and Response**

56. Reptiles are declining globally with at least 21% of assessed reptile species considered to be threatened with extinction.

57. Among reptiles, turtles are some of the most threatened, with more than half of turtles globally threatened with extinction.

58. The Center petitioned the Service to list the Sulawesi forest turtle under the ESA on February 27, 2025. 90 Fed. Reg. 41359, 41364 (Aug. 25, 2025).

59. The Center also petitioned the Service to emergency list the species due to the turtle's small range, on-going exploitation for trade, and Critically Endangered conservation status.

60. On August 25, 2025, the Service issued a 90-day finding determining that "the petition presents substantial scientific or commercial information indicating that listing the Sulawesi forest turtle as an endangered species or a threatened species may be warranted." 90 Fed. Reg. at 41364.

61. This finding triggered the Service's obligation to make a 12-month finding on the Sulawesi forest turtle petition by February 27, 2026.

62. The deadline for making and publishing this 12-month finding for the Sulawesi forest turtle has passed.

## CLAIM FOR RELIEF

### Violation of the ESA for Failure to Publish a Timely 12-Month Finding for the Sulawesi forest turtle

63. Plaintiff re-alleges and incorporates all the allegations set forth in this complaint.

64. The ESA requires the Service to publish a 12-month finding within 12 months of receiving a petition to list a species under the Act, when it makes a 90-day finding that listing may be warranted. Defendants made a positive 90-day finding but failed to perform their nondiscretionary duty to publish a timely 12-month finding for the Sulawesi forest turtle, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

A. Declare that Defendants violated the ESA by failing to issue a timely 12-month finding in response to the Center's petition to list the Sulawesi forest turtle;

B. Order Defendants to issue, by a date certain, a finding as to whether listing the Sulawesi forest turtle under the ESA is warranted, 16 U.S.C. § 1533(b)(3)(B);

C. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

D. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

E. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 31st day of August, 2026

*s/ Tanya Sanerib*
Tanya Sanerib (DC Bar No. 473506)
Center for Biological Diversity
1025 1/2 Lomas Blvd NW
Albuquerque, NM 87102
Phone: (206) 379-7363
Email: tsanerib@biologicaldiversity.org

Sarah Uhlemann (DC Bar No. 501328)
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
Phone: (206) 327-2344
Email: suhlemann@biologicaldiversity.org

*Attorneys for Plaintiff*